IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN VERSER (N-72074), | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 10 C 7513 |
| KENNETH HUBBARD, et al. | ) ) | Judge Elaine E. Bucklo |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Glenn Verser, a Stateville Correctional Center inmate, filed this 42 U.S.C.§ 1983 suit against Stateville Correctional Center Officers Kenneth Hubbard, Angela Smith, Clarence Wright, Glen Malone, Darla Michel, Dr. Partha Ghosh, and Dr. Liping Zhang. Plaintiff alleges the following: Officers Hubbard, Smith, and Wright either applied handcuffs too tightly or refused to loosen them when escorting him to Mt. Sterling, Illinois for a court hearing on January 29, 2009. Dr. Zhang subsequently issued Plaintiff a medical permit prohibiting single cuffing for six months. Drs. Zhang and Ghosh did not adequately treat Plaintiff for his injury, and Officers Malone and Michel single cuffed Plaintiff contrary to the permit when escorting him in March 2009 for a deposition in another area of the prison.

On June 1, 2011, this court denied a motion to dismiss filed by the officers, but granted the motion to dismiss filed by Dr. Ghosh, upon determining that his only involvement was the refusal to refer Plaintiff to a nerve specialist for his hand. Dr. Zhang has not entered an appearance. The Stateville officers ("Defendants") seek summary judgment. (R. 70.) Plaintiff has filed a response, to which Defendants have replied. (R. 77 and 78.) For the following reasons, the court grants in part and denies in part the motion. Defendants Hubbard, Smith, and Wright are dismissed, but Plaintiff may proceed against Defendants Michel and Malone.

# I. SUMMARY JUDGMENT STANDARD

### A.  Summary Judgment under Federal Rule of Civil Procedure 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact and that judgment based upon the uncontested facts is warranted. *See Celotex*, 477 U.S. at 325. If the movant meets this burden, the nonmoving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

### B.  Northern District of Illinois Local Rule 56.1 Statements

When addressing summary judgment motions, the court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying

undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The nonmoving party must admit or deny each factual statement proffered by the moving party and concisely designate any material facts that establish a genuine dispute for trial. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 71.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and to a statement of uncontested material facts under Fed. R. Civ. P. 56(e) and Local Rule 56.1. (*Id.*)

A court may consider to be true any uncontested fact in the movant's Rule 56.1 Statement that is not addressed by the nonmovant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Also, a court may disregard responses that do not properly cite to the record. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). "[E]vasive denials that do not fairly meet the substance of the material facts asserted" do not satisfy a litigant's obligation to properly respond to a Rule 56.1 factual statement. *Bordelon*, 233 F.3d at 528. Although *pro se* pleadings are liberally construed, Plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Board of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

With respect to the instant motion for summary judgment, Defendants filed a Rule 56.1 Statement of Uncontested Facts ("SOF"), attaching as exhibits Plaintiff's deposition, his medical records, and declarations from Officers Hubbard, Michel, and Malone. (R. 73.) Plaintiff responded to

Defendants' summary judgment motion and to their Statement of Uncontested Facts. (*See* R. 77, Pl's "Disputes Defendants' Statement of Facts" is construed as his response to Defs.' SOF.) Included with Plaintiff's response are statements from Plaintiff and fellow inmate Michael Edgleston, as well as a copy of Defendants' responses to interrogatories. (R. 77, Exhs. A, B, C.) Plaintiff admits to all but five of Defendants' Statement of Facts. (R. 77, Pl.'s Response to Defs.' SOF.) Accordingly, the court may consider to be true Defendants' Statement of Facts to which Plaintiff does not object. The court may also refer to the record for contested facts and for facts not covered by Defendants' Statement of Facts, and may also consider exhibits attached to the parties' summary judgment pleadings, including Plaintiff's deposition and the declarations and statements by the parties and witnesses. *See* 28 U.S.C. § 1746; *Walton v. Van Ru Credit Corp.*, No. 10 C 344, 2011 WL 6016232 at *6 (N.D. Ill. Dec. 2, 2011) (Mason, M.J.) (unsworn declarations and statements may be admissible under § 1746 where the declarant swears under the penalty of perjury that the statements are true). With these standards in mind, the court turns to the facts of this case.

## II.  FACTS

On January 29, 2009, Plaintiff was being transported from Stateville by Officers Hubbard and Smith to a hearing in Mt. Sterling, Illinois. (R. 73, Defs' SOF ¶ 9.) Stateville policy and procedures require that inmates be restrained anytime they leave a fully secured area of the prison. (R. 73, Defs. SOF ¶ 14; Exh. C, Declaration of Hubbard.) Plaintiff had never had a problem with being handcuffed before. (R. 73, Exh. E, Pl. Depo. at 9.) Plaintiff's restraints on January 29, 2009, included a "black box," a device placed over the hands after being cuffed. Plaintiff states that he was cuffed with his palms facing outward. (*Id.* at 7-8.)

Officer Hubbard applied the handcuffs, and according to Plaintiff, he complained immediately that the cuffs were too tight. (R. 77, Exhs. A & B, ¶ 3, Declarations of Plaintiff and Inmate Edgleston.)

Plaintiff states that Hubbard responded, "I don't know what to tell you." (*Id.*; *see also* R. 73, Defs. SOF ¶ 11 and Exh. E, Pl. Depo. at 10.) There is conflicting evidence about whether Hubbard checked the tightness of the cuffs. Plaintiff testified in his deposition that Hubbard did not check the cuffs after Plaintiff complained. (R. 73, Exh. E, Pl. Depo. at 10.) Hubbard explained in his interrogatory responses that officers will stick a finger between a cuff and the inmate to determine if the cuff is too tight, and Hubbard stated that he performed such a test when Plaintiff complained about his cuffs being too tight. (R. 77, Exh. C, Hubbard Answer to Interrogatory 8.) In his declaration submitted with his summary judgment motion, however, Hubbard states that, while it is his standard practice to test the tightness of cuffs by inserting his finger between the cuff and the inmate, Hubbard has "no recollection of the events alleged in [Plaintiff]'s Complaint." (R. 73, Exh. C, Hubbard Declaration ¶¶ 3, 6.)

Plaintiff contends that he then told Officer Smith that his handcuffs were too tight, but Smith responded only by rolling her neck and eyes. (R. 77, Exh. A, Pl. Declaration ¶ 5.) Plaintiff then told Officer Wright, who was processing inmates for writs that day, that the handcuffs were too tight. Wright allegedly did not check Plaintiff's cuffs, but instead, told him to inform Officer Hubbard. (R. 73, Defs. SOF ¶ 12; Exh. E, Pl. Depo. at 11; R. 77, Exh. A, Pl. Declaration at ¶ 6.) Plaintiff remained handcuffed for thirteen hours that day. (R. 73, Defs. SOF ¶ 13; Exh. E, Pl. Depo. at 11.) Plaintiff testified in his deposition that he asked the judge who presided over the January 29, 2009, hearing to direct that the handcuffs be loosened, but she declined. (R. 73, Exh. E, Pl. Depo. at 12.) Plaintiff further testified that he again complained to Officers Hubbard and Smith on the way back from court. (*Id.* at 13.)

Plaintiff alleges that his right hand became numb and that he suffered nerve damage as a result of the handcuffs on January 29, 2009. (R. 73, Defs. SOF ¶ 17; Exh. E, Pl. Depo. at 12.) Plaintiff was examined by a medical technician on January 30, 2009. (R. 73, Defs. SOF ¶ 18, Exh. B at 2.) He was

then referred to Physician Assistant Latoya Williams, who examined him on February 4, 2009. Williams noted Plaintiff's complaints about his right hand and referred him to "UC" (presumably University of Chicago Medical Center) for sensation testing. (R. 73, Exh. B at 3.) Plaintiff saw Dr. Zhang on February 6, 2009, who also noted numbness in Plaintiff's right thumb, and who prescribed "double cuffing." (*Id.* at 4.) On February 7, 2009, Dr. Ghosh issued a medical permit directing "double cuffing" for Plaintiff from 2/7/09 to 8/31/09. (*Id.* at 5.) Though the medical personnel noted numbness with Plaintiff's right thumb area, none of them specifically diagnosed nerve damage. (*Id.* at 1-5.) Plaintiff contends, however, that his numbness is symptomatic of nerve damage. (R. 77, Pl. SOF Response ¶ 24.) The court also notes that Plaintiff complained of pain in his hand as late as his deposition in December 2011. (R. 73, Exh. E, Pl. Depo. at 12.)

On March 30, 2009, Plaintiff was escorted by Officers Malone and Michel from a secured area of Stateville to a less secured area of the facility for a video deposition. (R. 73, Defs. SOF at ¶ 25.) Plaintiff states that he told Michel and Malone that he had a medical permit not to be single cuffed. (*Id.* at ¶ 26; *see also* Pl. Depo. at 17, 19.) Plaintiff testified that the medical permit requiring that he be double cuffed would have been in his master file and would have been included with a writ packet, a packet of information that is brought with an inmate being transferred on a writ. (R. 73, Defs. SOF ¶ 27.) No writ packet, however, was prepared for escorting Plaintiff from one area of Stateville to another for his video deposition. (*Id.* at ¶ 31; *see also* R. 73, Exhs. F & G, Malone's and Michel's Decls. ¶ 5.) Neither Michel nor Malone saw a medical permit because no writ packet was prepared for their escorting of Plaintiff to his video deposition. (R. 73, Defs. SOF ¶ 32; *see also* R. 73, Exhs. F & G, Malone's and Michel's Decls. ¶¶ 4-5; Exh. E, Pl. Depo. at 20-21.)

The parties dispute whether Michel and Malone were aware of the medical permit. Michael and Malone contend that, because there was no writ packet and because they saw no medical permit,

they did not believe that such a permit existed. (R. 73, Exhs. F & G, Malone's and Michel's Declarations at ¶¶ 4-6.) Plaintiff, as well as a fellow inmate named Michael Edgleston, state that Plaintiff told both officers about the permit. (R. 73, Exh. E, Pl. Depo. at 17, 19; R. 77, Exh. A, Pl. Decl. ¶¶ 9-10; Exh. B, Edgleston Decl. ¶¶ 7-8.) Plaintiff contends that he suffered an exacerbation to his injury, for which he received pain medication. (R. 73, Exh. E, Pl. Depo. at 21.)

### III. DISCUSSION

Defendants Hubbard, Smith, and Wright argue that the evidence demonstrates that their use of handcuffs was reasonable, that Plaintiff suffered no serious physical injury, and that there was no constitutional violation with their application and refusal to loosen handcuffs on January 29, 2009. Defendants Michel and Malone contend that there is no evidence that they were aware of the double-cuffing medical permit and thus no evidence that they acted with deliberate indifference to Plaintiff's condition on March 30, 2009.

Whether Plaintiff's claims are viewed under excessive force or deliberate indifference to a serious physical condition analysis, both approaches result in the same question – whether the officers knew that their application of handcuffs or refusal to loosen them resulted in unnecessary and wanton infliction of pain and physical injury to Plaintiff. *See Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (to establish a claim of excessive force, a prisoner "must have evidence that 'will support a reliable inference of wantonness in the infliction of pain'") (citation omitted); *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012) ("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'") (citation omitted). Regardless of the approach, both claims stem from the Eighth Amendment, which prohibits cruel and unusual punishment and protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citations omitted). Only conduct that is

"maliciously motivated" and unrelated to institutional security is considered unconstitutional. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).

With respect to claims that handcuffs were applied and kept too tightly, courts have found no viable constitutional claim where the plaintiff complained to the officers only a few times and the evidence could not establish that officers were aware that the cuffs were causing serious pain or injury. *See Sow v. Fortville Police Dept.*, 636 F.3d 293, 304 (7th Cir. 2011); *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009); *Tibbs v. City of Chicago*, 469 F.3d 661, 663 (7th Cir. 2006). In *Sow*, the Seventh Circuit affirmed summary judgment where the plaintiff complained only once about his cuffs being too tight, but never elaborated on his complaint. *Sow*, 636 F.3d at 304. In *Stainback*, summary judgment was proper where the arrestee simply asked officers not to cuff him behind his back but did not convey to the officers that he had a preexisting injury. *See Stainback*, 569 F.3d at 773. Although the plaintiff allegedly suffered a rotator-cuff injury necessitating surgery as a result of being handcuffed, the summary judgment evidence demonstrated that the officers were not made aware of a preexisting condition and the plaintiff voiced only general complaints of pain after being cuffed. *Id.* at 769, 773. In *Tibbs,* summary judgment was affirmed where the plaintiff complained twice following his arrest about handcuffs being too tight, his wrists were red for one and one-half days, and he requested no medical care for his wrists. *See Tibbs*, 469 F.3d at 663.

Cases where the use of handcuffs arguably amounted to a constitutional violation have included additional acts by officers demonstrating a wanton infliction of pain. In *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003), summary judgment was inappropriate for an officer who allegedly "grabbed [a suspect's] left arm, jerked it into handcuffing position, forced her arm behind her back, slammed the handcuff down on her wrist, jerked her wrist, and tightened the handcuffs until [she] could not feel her hands, . . . [and refused to] loosen the handcuffs or remove them until she arrived at the police station"

even though the suspect "protested that the handcuffs were too tight, that she could not feel her hands, and that she was in pain," *Id.* at 774-75. In *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), summary judgment could not be granted where the plaintiff produced evidence that the arresting officer shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, and waited over an hour to loosen handcuffs which she complained were too tight. In *Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir.1987), the court determined that it was appropriate for a jury to decide whether force applied was excessive for claims that officers, even after the plaintiff allegedly did not resist arrest, threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised.

In the instant case, viewing the evidence in a light most favorable to Plaintiff, the summary judgment evidence demonstrates that he cannot proceed with his claims against three of the five officers. With respect to the January 29, 2009, cuffing, it is clear that Plaintiff cannot establish a constitutional violation by Officer Wright, the officer who Plaintiff saw just before leaving the facility. Plaintiff told Wright only once that his handcuffs were too tight, and Wright instructed Plaintiff to inform Hubbard, the officer who was escorting Plaintiff to and from court. Wright had no other involvement apart from this one encounter. Plaintiff does not indicate that he elaborated about how the cuffs were too tight or what pain or discomfort he was feeling. The evidence thus demonstrates only one general complaint by Plaintiff to Wright with no elaboration and Wright's response instructing Plaintiff to inform the officer who was escorting him. (R. 73, Exh. E, Pl. Depo at 11; R. 77, Exh. A, Pl. Decl. ¶ 6; *see also* R. 77, Pl. Response, 2-4 (Plaintiff makes no mention of what he told Wright in his response to the summary judgment motion.)) Evidence of one general complaint to an officer "without elaborating on any injury, numbness, or degree of pain" is insufficient to demonstrate a constitutional violation. *Sow*, 636 F.3d at 304 (quoting *Tibbs*, 469 F.3d at 666).

The court reaches the same conclusion for Plaintiff's claims against Officers Hubbard and Smith. As to the application of the cuffs, Plaintiff does not contest that he had to be cuffed before leaving the prison. Nor does he contend that there was a preexisting condition preventing him from being cuffed in a certain way, or that Hubbard applied the handcuffs maliciously or sadistically with an intent to cause harm. Rather, Plaintiff's contention is simply that Hubbard and Smith refused to check or loosen his handcuffs after he told them that they were too tight. (*See* Complaint at 3; *see also* R. 77, Exh. A, Pl. Decl. at ¶¶ 3-5.) The evidence, however, indicates that Plaintiff told these officers only twice that his cuffs were too tight, and there is no indication that Plaintiff elaborated on his condition either time. In Plaintiff's deposition, he testified that he felt that the cuffs were too tight immediately when Hubbard applied them and that he told Hubbard. (R. 73, Exh. E, Pl. Depo. at 9-10.) Plaintiff iterates in his declaration that he told Hubbard immediately after he applied the cuffs that they were too tight, that Plaintiff attempted to show Hubbard how the cuffs were cutting into his skin, but that Hubbard refused to take notice and responded simply, "I don't know what to tell you." (R. 77, Exh. A, Pl. Decl. at ¶¶ 3-4.) Plaintiff indicates that he repeated his complaint to Hubbard once during their return trip from court. (R. 73, Exh. E, Pl. Depo. at 14.) However, there is no indication that Plaintiff elaborated on the painfulness or discomfort of his handcuffs during his 13-hour trip with Hubbard.

As to Officer Smith, the evidence demonstrates that Plaintiff told her once as he was leaving his cell that his handcuffs were too tight, and again on their return trip from court. (R. 73, Exh. E, Pl. Depo. at 10, 14; *see also* R. 77, Pl. Decl. ¶ 5; Compl. at 3.) Again, there is no indication that he ever elaborated to Smith that the handcuffs were causing pain and numbness and the record at best demonstrates only two general complaints of the handcuffs being too tight during their 13-hour trip.

Such facts cannot establish a constitutional violation by either Hubbard or Smith. The record indicates that Plaintiff told these officers twice during their 13-hour trip that his cuffs were too tight and once attempted to elaborate on his complaint to Hubbard. An inmate who makes only a few general complaints about his handcuffs hurting cannot establish that officers acted with the requisite state of mind to support a constitutional violation. *Ortiz v. City of Chicago*, No. 09 C 2636, 2010 WL 3833962 at *11 (N.D. Ill. Sep. 22, 2010) (Dow, J.) (generalized complaints, without more, were insufficient to maintain a constitutional claim based on overly tight handcuffs) (citing *Stainback*, 569 F.3d at 773).

"Handcuffs, by their very nature, are restrictive, uncomfortable, and unfamiliar to most individuals." *Kopec v. Tate*, 361 F.3d 772, 782 (3rd Cir. 2004); *see also LaLonde v. County of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000) ("[h]andcuffs are uncomfortable and unpleasant"). A claim that the application or use of handcuffs amounted to excessive force or deliberate indifference must be supported by more than a few generalized complaints. In *Payne*, 337 F.3d 767, 779, where the officers not only allegedly applied handcuffs too tightly, but also jerked the plaintiff's arm back, jerked her wrists, and slammed handcuffs on her, the plaintiff not only complained that the handcuffs were too tight, but also elaborated that she was losing feeling in her hand and that her arm hurt. According to the evidence in this case, Plaintiff made only several general complaints to Hubbard and Smith but provided no description about his discomfort, such as numbness, pain, pinching of his skin. Plaintiff thus cannot proceed with such claims. *See Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) (summary judgment is considered the "'put up or shut up' moment in a lawsuit, when a party must show what evidence" he has to support his claim) (citation omitted). This court noted in its denial of the Defendants' motion to dismiss that, if Plaintiff's claims were simply "that he informed officers ... twice over a period of 13 hours that his cuffs were too tight [but did not] elaborate[] to the officers ... how the handcuffs caused pain," such claims would not establish a constitutional violation.

(R. 37, Order of 6/1/11.) Having allowed the parties to develop the record in this case, it is now clear that Plaintiff cannot establish a constitutional violation against Hubbard, Smith, and Wright. Accordingly, the court grants summary judgment for these Defendants and dismisses them from this suit.

With respect to the claims against Michel and Malone, however, there is a genuine issue of material fact with whether these officers single-cuffed Plaintiff despite being told about a medical permit prohibiting such cuffing. Although Michel and Malone contend that they had no knowledge of the medical permit, Plaintiff and Edgleston both state that Plaintiff told them about the permit when these officers came to escort him to his March 30, 2009, deposition. (R. 77, Exhs. A ¶¶ 9-10 and Exh. B ¶¶ 7-8 (both Plaintiff and inmate Edgleston state in their declarations that Plaintiff told Malone and Michel about the medical permit, to which Michel responded, "I don't give a shit about your medical permit . . . you will be single cuffed.") Given the controverted evidence about whether Michael and Malone were made aware of the no-single-cuffing medical permit, Plaintiff may be able to establish that these officers acted with deliberate indifference to Plaintiff's condition. As stated by the Seventh Circuit in *Stainback*, "[h]ad the Officers known of a preexisting injury or medical condition that would have been aggravated by handcuffing [Plaintiff], or had [Plaintiff] communicated to the Officers that he suffered from such an infirmity, the Officers certainly would have been obligated to consider that information" and act accordingly with determining how to cuff him. *Stainback*, 569 F.3d at 773. This Court thus cannot grant summary judgment for Officers Michel and Malone.

## IV.  CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment [70] is granted in part and denied in part. Summary judgment is granted for Defendants Kenneth Hubbard, Angela Smith, and Clarence Wright, and these Defendants are dismissed. Summary judgment is denied for

Defendants Darla Michel and Glenn Malone, and Plaintiff may proceed with his claims against these Defendants.

                                          **ENTER:** _____
                                                          **Elaine E. Bucklo**

**DATE: 5/9/12**                                                 **United States District Court Judge**