IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENN VERSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 7513 |
| | ) |
| KENNETH HUBBARD, et al. | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Glenn Verser ("Verser") alleges that Dr. Liping Zhang ("Dr. Zhang"), a former contract physician at the Stateville Correctional Center, denied him adequate medical care in violation of his Eighth Amendment rights. I grant Dr. Zhang's motion for summary judgment for the reasons stated below.

I.

A.

At the summary judgment stage, Verser is entitled to have the facts construed in the light most favorable to him with all reasonable inferences drawn in his favor. *See Shields v. Ill. Dept. of Corrections*, --- F.3d ---, 2014 WL 949950, at *2 (7th Cir. Mar. 12, 2014). However, when reviewing Local Rule 56.1 statements of fact, I disregard "statements and responses that consist of hearsay, speculation, legal conclusions, improper argument, and evasive denials, in addition to those that do not

1

properly cite to the record, are unsupported, or are otherwise improper." *Boudreau v. Gentile*, 646 F.Supp.2d 1016, 1019 n.1 (N.D. Ill. 2009). Therefore, I give no weight to the unsigned declaration attached to Verser's statement of additional facts. *See Davis v. Wells Fargo Bank*, 685 F.Supp.2d 838, 842 (N.D. Ill. 2010) (striking unsigned, unsworn, and undated declarations as inadmissible).

At all times relevant to this lawsuit, Verser was imprisoned at the Stateville Correctional Center ("Stateville") in Crest Hill, Illinois. He is serving a sixty-year prison sentence for the murder and attempted armed robbery of Ismael Nuñez and the attempted murder, attempted armed robbery, and aggravated battery of Silvestre Compos. *See U.S. ex rel. Verser v. Nelson*, 980 F.Supp. 280 (N.D. Ill. 1997).

This lawsuit relates to injuries Verser sustained on January 29, 2009 when he was transported from state prison to Mt. Sterling, Illinois for a court appearance. The correctional officers who transported Verser restrained him using a single set of "black box" handcuffs.[1] Verser's hands were situated in front of him with his palms facing outwards in opposite directions. Verser alleges that he was handcuffed too tightly for thirteen

---

[1] "The 'black box' is a plastic rectangular device placed over the chain that connects the handcuffs, thereby restricting hand movement and reducing access to the handcuffs' keyholes." *Levi v. Thomas*, 429 Fed.Appx. 611, 612 (7th Cir. 2011).

2

hours on the day of his court appearance, which caused numbness in his right hand and thumb area.

Upon returning to Stateville, Verser sought medical care for his handcuff-related injuries. A physician assistant named LaTanya Williams ("Williams") examined Verser on February 4, 2009. Williams wrote in her progress notes that Verser reported numbness in right thumb and "thenar" area since the day of his court appearance. R. at 1343. Williams recommended a referral "to UC for sensation eval[uation] (thorough)" and patient education. *Id*.

Dr. Zhang was the next medical professional to examine Verser's handcuff-related injuries. She does not recall whether she read Williams's progress notes before examining Verser on February 6, 2009. When questioned about Williams's progress notes, Dr. Zhang denied knowing what a "sensation eval[uation]" is, much less a "thorough" one. Zhang Dep. at 44:10-14. Similarly, Dr. Zhang did not know what "UC" meant, but speculated that it might refer to urgent care. In contrast, Verser speculates that Williams wrote "UC" because she thought he should be referred the University of Illinois at Chicago for a nerve conduction study. These competing contentions about the meaning of "UC" are pure speculation divorced from any personal knowledge. Therefore, I draw no inferences about the meaning of "UC" in resolving the present motion.

Dr. Zhang's notes from her own examination of Verser indicate that he was still complaining of numbness in his right thumb one week after being handcuffed too tightly. She observed that Verser had a discoloration on his right hand with mild swelling. Dr. Zhang attributed these symptoms to Verser's possible allergic reaction to metal handcuffs or excessive rubbing. *Id*. at 36:21-24. She did not think handcuffs could cause numbness or nerve damage even when applied too tightly for a prolonged period of time. *Id*. at 50:14-16, 51:1-4 and 10-12.

Although Dr. Zhang's progress notes contain a reference to "right thumb sensation," they do not reflect any observations or findings about whether Verser retained feeling in his right thumb. Dr. Zhang testified that she did, in fact, check Verser's sensation and found it to be intact, indicating the absence of nerve damage. She says her failure to document this conclusion in her progress notes was "maybe by mistake." *Id*. at 35:13-16.

Dr. Zhang's final assessment was that Verser had not sustained nerve damage even though he was experiencing numbness in his right thumb. She described Verser's injuries as "on the surface, on the top of the tissue, so I can see it. It's not on the nerve. The nerve is very deep inside. He couldn't damage the nerve." *Id*. at 36:13-16. Dr. Zhang did not recommend that Verser be referred to an outside specialist for a nerve

4

conduction study. Such a test may have determined whether the numbness in Verser's right thumb stemmed from localized swelling and impingement as opposed to a central nervous system issue.

In addition to prescribing pain medication, Dr. Zhang recommended a permit that would allow Verser to be restrained using a technique known as "double cuffing" for the next six months. This technique, which utilizes two sets of handcuffs locked together, is more comfortable and permits greater freedom of movement than single cuffing. Dr. Zhang thought double cuffing would make it easier for Verser "to change [the] angle or position of his arm without damage [to] his skin." *Id*. at 38:7-10. Dr. Ghosh, the Medical Director at Stateville, signed a double cuffing permit for Verser on February 7, 2009.

Verser admits that Dr. Zhang's examination of him on February 6, 2009 was the only time she treated him for handcuff-related injuries. *See* Dkt. No. 202 at ¶ 25. At the time of this examination, Verser believed that Dr. Zhang's treatment of his injuries was "appropriate." Pl.'s Dep. at 13:19-21. He did not ask Dr. Zhang to see an outside specialist for a nerve conduction study or express any dissatisfaction with her treatment of his injuries.

Verser claims that his handcuff-related injuries were exacerbated in March 2009 when two correctional officers, Defendants Glen Malone and Darla Michael, disregarded his double-

5

cuffing permit.  *See* Dkt. No. 174 (noting that Verser reached settlement with Defendants Malone and Michael).  Dr. Zhang was not involved in examining or treating Verser for the additional pain in his wrist stemming from this incident.

After her examination of Verser's handcuff-related injuries in February 2009, the next time Dr. Zhang interacted with Verser was during his four-month hunger strike from October 2009 to February 2010.  A staff physician or registered nurse checked Verser's vital signs and performed a physical on him every seventy-two hours during his hunger strike.  When Dr. Zhang examined Verser, she contends that he made no complaints relating to a wrist injury.  In contrast, Verser alleges that Dr. Zhang refused to acknowledge or document his complaints of wrist pain.

Dr. Zhang's employment as a staff physician at the Stateville ended in June 2010.

### B.

In this lawsuit, Verser alleges that Dr. Zhang denied him adequate medical care in violation his Eighth Amendment rights.  Specifically, Verser faults Dr. Zhang for "fail[ing] to refer [him] to a nerve specialist or order x-rays."  *See* Compl. at ¶ 9.  Verser's complaint does not state any claims relating to Dr. Zhang's examinations of him during his hunger strike.  To the extent Verser now argues that Dr. Zhang was deliberately indifferent to his complaints of wrist pain during his hunger

6

strike, these arguments fall outside the scope of his complaint and are unresponsive to the present motion. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

II.

Dr. Zhang has moved for summary judgment on three grounds: (1) Verser was not suffering from an objectively serious medical condition on February 6, 2009; (2) she was not deliberately indifferent to Verser's medical needs on that date; and (3) she is entitled to qualified immunity.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A.

In *Estelle v. Gamble*, 429 U.S. 97, 105 (1976), the Supreme Court held that "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. The prisoner's illness or

7

injury must be objectively serious (i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention"). *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A prisoner alleging inadequate medical care must also present evidence that prison officials disregarded a known and excessive risk to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This subjective standard is comparable to criminal recklessness. *Id*. at 839-40. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

I will assume, without deciding, that Verser had objectively serious medical needs when Dr. Zhang examined him on February 6, 2009. The dispositive issue for purposes of resolving Dr. Zhang's motion for summary judgment is whether a reasonable jury could find that she was deliberately indifferent to Verser's handcuff-related injuries. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (noting that courts can "skip[] all medical questions" and "rely[] entirely on the lack of evidence of deliberate indifference" when resolving motions for summary judgment on denial of medical care claims).

B.

Viewed in the light most favorable to Verser, the evidence shows that Dr. Zhang (1) may not have read or understood the physician assistant's progress notes before she examined Verser; (2) failed to document her conclusion that Verser's sensation was intact; (3) ruled out the possibility of nerve damage based in part on her belief that handcuffs could not cause such an injury; (4) diagnosed Verser's injuries as skin irritation caused by an allergic reaction to metal handcuffs or excessive rubbing; and (5) prescribed pain medication and recommended that Verser be given a double-cuffing permit for the next six months.

Although Dr. Zhang may have been negligent in some respects, no reasonable jury could find that she was deliberately indifferent to Verser's medical needs. In fact, Verser admits that he thought Dr. Zhang's treatment of his injuries was appropriate at the time she rendered care. Verser's attempt to fault Dr. Zhang during litigation for not ordering a nerve conduction study is foreclosed by the Supreme Court's holding that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]" *Estelle*, 429 U.S. at 107; *see also Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."); *Snipes v. DeTella*, 95 F.3d 586, 592

(7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment.").

This is not a case where Verser's injuries were consistent with only one course of treatment such that Dr. Zhang's decision not to order a nerve conduction study constituted deliberate indifference. *See Steele v. Choi*, 82 F.3d 175, (7th Cir. 1996) ("If the symptoms plainly called for a particular medical treatment--the leg is broken, so it must be set; the person is not breathing, so CPR must be administered--a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983.").

Nor is this a case where the evidence shows that Dr. Zhang "resort[ed] to an easier course of treatment that [she knew would be] ineffective." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *cf. Hayes v. Snyder*, 546 F.3d 516, 525-26 (7th Cir. 2008) (reversing grant of summary judgment to prison medical director who denied inmate's repeated requests and examining physician's recommendation for referral to urologist even as inmate's testicular cysts became larger and more painful over time); *Greeno*, 414 F.3d at 654 (reversing grant of summary judgment to prison officials whose "obdurate refusal to alter [prisoner's] course of treatment despite his repeated reports that the medication was not working and his condition [later diagnosed as an esophageal ulcer] was getting worse").

Instead, Verser's claim falls into the long line of cases where courts have granted summary judgment to physicians who decided not to order a specific diagnostic test or course of treatment that a prisoner later argued was medically necessary. *See e.g.*, *Jackson*, 541 F.3d at 698 (affirming summary judgment for physician's assistant who decided not to order MRI for prisoner complaining of back pain or refer him to orthopedic surgeon); *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) (affirming summary judgment for physician who decided not to order cystoscopy for inmate who complained of blood in his urine and was later diagnosed with bladder cancer); *Johnson*, 433 F.3d at 1014 (affirming summary judgment for physician who decided not to order surgery to treat prisoner's hernia).

In short, Verser's argument that Dr. Zhang should have referred him to an outside specialist for a nerve conduction study "is a classic example of a matter for medical judgment" that falls short of showing that she was deliberately indifferent to his medical needs. *Estelle*, 429 U.S. at 107.

C.

Having concluded that no reasonable jury could find that Dr. Zhang was deliberately indifferent to Verser's medical needs, I need not address Dr. Zhang's argument that she is entitled to qualified immunity. *See Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009) (noting that courts need not reach qualified

immunity issue when "the merits of the deliberate indifference claim are dispositive of the case").

III.

Dr. Zhang's motion for summary judgment is GRANTED for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 3, 2014